MORGAN ET AL., EXRS., APPELLEES, *v.* THE FIRST NATIONAL BANK OF CINCINNATI ET AL., APPELLEES; MORGAN ET AL., APPELLANTS.

(No. 7002—Decided November 8, 1948.)

*Messrs. Cottle, Campbell & Druffel,* for appellee The First National Bank of Cincinnati.

*Mr. Robert C..Porter,* for appellee Bertha L. Morgan.

*Mr. James L. Elder* and *Messrs. Taft, Stettinius & Hollister,* for appellee The Children's Home.

*Messrs. Peck, Shaffer & Williams,* for appellee Home for Incurables.

*Mr. Charles Rodner* and *Messrs. Nippert & Nippert,* for appellee The Bodmann Protestant Widows' Home.

*Messrs. Bettinger, Schmitt & Kreis,* for appellee The Cincinnati Association for the Welfare of the Blind.

*Messrs. Kunkel & Kunkel,* for appellee The Fresh Air Farm.

*Messrs. Caldwell & Shoemaker,* for appellee The Anti-Tuberculosis League.

*Mr. Richard Todd* and *Messrs. Dinsmore, Shohl,*

*Sawyer & Dinsmore,* for appellee Young Women's Christian Association.

*Mr. Robert Adair Black,* for appellee The Salvation Army.

*Mr. James L. Elder* and *Messrs. Taft, Stettinius & Hollister* for appellee The Children's Hospital.

*Messrs. Caldwell & Shoemaker,* for appellee The Associated Charities.

*Mr. Edgar B. Traver,* for appellee The University of Cincinnati.

*Messrs. Dinsmore, Shohl, Sawyer & Dinsmore, Mr. F. B. McConaughy* and *Mr. Charles H. Urban,* for appellants Urban Morgan and Arthur R. Morgan, Jr.

MATTHEWS, P. J.   This action was begun by Urban Morgan and Charles H. Urban, as executors under the last will and testament of Edna Urban Morgan, deceased, seeking a judicial declaration of the rights of the parties under the will.   The defendants are The First National Bank of Cincinnati, named as trustee of the residue of the estate, and all the beneficiaries under the will.   Pleadings were filed by the defendants.   The case came on for trial at which it developed that there was no dispute as to the facts, but that there was a complete divergence of views as to the operative effect under the law of certain provisions of the will.

The will of Edna Urban Morgan was executed on July 22, 1943.   She died on December 23, 1943, and her will was admitted to probate on January 6, 1944. At the time of executing her will and at the time of her death she was a widow and the mother of two children—Urban Morgan and Arthur R. Morgan, Jr., parties to this action, both of whom are adults.

After directing payment of her debts, the distribution of articles of personal property to persons men--

tioned in a letter of the same date as the will and bequeathing a certain bank deposit and 200 shares of stock of The United States Playing Card Company to her sister and brother, and $10,000 to a niece, she provided as follows:

"*Item Five.* All the rest and residue of my estate of whatever name or nature and wherever situate, I give, devise and bequeath to The First National Bank of Cincinnati, in trust however for the following uses and purposes:

"Two-thirds (2/3) of said residue shall be placed by my trustee in a fund known as the Urban Morgan Trust. The full net yearly income from said fund shall be paid by my trustee to my son, Urban Morgan, in quarterly installments for and during his natural life. Should said net yearly income not permit my said son, Urban Morgan, to live as he customarily does, then and in that case he shall have the right by and with the consent of my trustee herein appointed, to draw yearly from the principal of said trust such sums as will enable him to so live.

"*Item Six.* Upon the death of my said son, Urban Morgan, and provided also that Marion K. Morgan, his wife, has predeceased him, said Urban Morgan Trust shall terminate and I direct my trustee to turn over the remainder of said fund, both principal and interest, in equal parts to the Children's Home, the Home for Incurables, the Bodmann Protestant Widows' Home, The Cincinnati Association for the Welfare of the Blind, the Anti-Tuberculosis League, the Fresh Air Farm, the Young Women's Christian Association, the Salvation Army, the Children's Hospital, and the Associated Charities, and I give, devise and bequeath the remainder of said fund accordingly.

"*Item Seven.* If, after my death, my son, Urban Morgan, shall die, leaving his present wife, Marion

K. Morgan, as his widow, then and in that case said Urban Morgan Trust shall continue for the benefit of said Marion K. Morgan, she to receive one-third (1/3) of the net income therefrom in quarterly installments until her death or until she remarries, at the happening of either of which events, said Urban Morgan Trust shall terminate and thereupon I direct my trustee to distribute the remainder in said trust fund, both principal and interest, in equal parts to the institutions named in Item Six herein, and I give, devise and bequeath said remainder accordingly. The remaining two-thirds (2/3) of the net income of said Urban Morgan Trust shall be merged into the principal thereof and invested by my trustee.

"*Item Eight.* The remaining one-third (1/3) of said residue shall be placed by my trustee in a fund known as The Arthur R. Morgan, Jr. Trust, and my trustee shall pay the full net yearly income therefrom to my son, Arthur R. Morgan, Jr., in quarterly installments for and during his natural life. Should said net yearly income not permit my said son, Arthur R. Morgan, Jr., to live as he customarily does, then and in that case he shall have the right, by and with the consent of my trustee herein appointed, to draw yearly from the principal of said trust such sums as will enable him to so live.

"*Item Nine.* Upon the death of my son, Arthur R. Morgan, Jr., and providing also that Bertha Morgan, his wife, has predeceased him, The Arthur R. Morgan, Jr. Trust shall terminate, and I direct my trustee to turn over the remainder of said trust fund, both principal and interest, in equal parts to the institutions named in Item Six herein, and I give, devise and bequeath said remainder accordingly.

"*Item Ten.* If, after my death, my son, Arthur R. Morgan, Jr. shall die, leaving his present wife, Bertha

Morgan, as his widow, then and in that case, The Arthur R. Morgan, Jr. Trust shall continue for the benefit of said Bertha Morgan, she to receive one-third (1/3) of the net income therefrom in quarterly installments until her death or until she remarries, at the happening of either of which events, said Arthur R. Morgan, Jr. Trust shall terminate, and thereupon I direct my trustee to distribute the remainder in said trust fund, both principal and interest, in equal parts to the institutions, mentioned in Item Six herein, and I give, devise and bequeath said remainder accordingly. The remaining two-thirds (2/3) of the net income of said Arthur R. Morgan, Jr. Trust shall be merged into the principal thereof and invested by my trustee.

"*Item Eleven.* I hereby give my trustee full power and authority, without the intervention of any court, to sell, invest and reinvest any part or all of the trust funds herein mentioned, to execute any and all documents and to do anything and everything necessary in its best judgment for the benefit of said trust funds.''

In subsequent items, the testatrix provided that the taxes on the specific bequests should be paid out of the residue, that any person contesting the will should forfeit the provisions made for such person, and that such share so forfeited should go to the University of Cincinnati and the institutions named in item six. In the last item of her will she named her son Urban Morgan and her brother Charles H. Urban executors, and requested that they be permitted to serve without bond. She also provided that if her brother were not living at her death The First National Bank of Cincinnati should act in his stead. She also appointed The First National Bank of Cincinnati trustee under item five of her will.

No evidence was offered as to the kind or value of

property constituting these trust funds. There is an implication resulting from the size of the specific bequests and the number of charitable institutions mentioned that the funds must be substantial, but as to whether it consists of real or personal property, or both, nothing definite has been shown. There is no reference to real estate.

There is no evidence that either Urban Morgan or Arthur R. Morgan, Jr., was extravagant, improvident, or incompetent. From the fact that Urban Morgan was named as one of the executors to serve without bond, we infer that the testatrix believed that he was competent and trustworthy to share in the administration of this entire estate. This, and the fact that the will provided for a continuance of his established mode of living we think are indications that the testatrix had confidence in his business judgment and approved of his mode of living. It certainly cannot be said that the will discloses that when the testatrix placed two-thirds of this estate in trust for his life that she was actuated by the motive or purpose of protecting him against his own extravagance, improvidence, or incompetence. And this, it seems to us, precludes any assumption that when she placed the remaining one-third in trust for Arthur R. Morgan, Jr., she was actuated by any such motive.

From the provisions making the right of Urban Morgan and Arthur R. Morgan, Jr., to draw upon the principal of the trust fund only if necessary to live in their accustomed way, we draw the inference that the testatrix was endeavoring to provide that as much of the principal as possible should be preserved for the charities to take upon the death of the sons.

There was no evidence of the circumstances surrounding the execution of this will from which a different inference can be drawn.

Another purpose, other than to protect the life beneficiaries, must be found, and that other purpose is apparent upon the face of the will. Testatrix thought she was giving this entire estate to the ten charitable institutions named by her, and a municipal educational institution, to take effect in enjoyment after the death of the life beneficiaries. The only effective way she could accomplish this was by the creation of this trust. Although taken to know the law relating to the effect of her death within one year, she did not contemplate, and, therefore, made no provisions for the contingency of her death taking place within one year of the execution of her will, resulting in the invalidation of the bequests by Section 10504-5, General Code.

Then finding no purpose expressed that the legal title was withheld from the sons to protect them, or any other purpose stated as to the reason for the creation of the trust, the natural conclusion is that her purpose or motive was to protect the ultimate beneficiaries. In the note to Section 337 of 2 Restatement of the Law of Trusts, it is said:

"If a trust is created for successive beneficiaries, in the absence of circumstances indicating a further purpose, the inference is that the only purpose of the trust is to give the beneficial interest in the trust property to one beneficiary for a designated period and to preserve the principal for the other beneficiary, and if each of the beneficiaries is under no incapacity, and both of them consent to the termination of the trust, they can compel the termination of the trust."

The testatrix did die within one year, with the result that the entire estate which she thought would finally pass to the charitable and educational institutions became intestate property, passing to Urban Morgan and Arthur R. Morgan, Jr., as the sole heirs at law and next of kin of their mother.

Upon the failure of the charitable and educational bequests, the only persons having any interest in this estate were Urban Morgan and Arthur R. Morgan, Jr., and their wives, contingent upon survival of their respective husbands. Each has disclaimed the legacy and by answers filed herein consent that the court decree that the absolute title to the corpus of the trust property is in Urban Morgan and Arthur R. Morgan, Jr., respectively, free of all incumbrances. Urban Morgan and Arthur R. Morgan, Jr., have entered into an agreement by which each has transferred to the other all his right and title in and to the share in which that other was given the income for life, so that they stand before the court as the absolute owners of their respective shares, subject only to whatever valid control during their lives is withheld from them by the terms of their mother's will.

By their cross-petitions, they pray that their respective shares be transferred to them, free of any control by the testamentary trustee.

The trial court found as one of its conclusions of law that "The primary object of the testatrix, Edna Urban Morgan, in creating the Urban Morgan Trust and Arthur R. Morgan, Jr., Trust under her will was to enable her sons to live as they customarily lived, meaning befitting the station in life to which they had been reared and to which they were accustomed, and in creating said trusts, said testatrix intended to insure that her sons Urban Morgan and Arthur R. Morgan, Jr., would live on a plane to which they had been accustomed throughout their entire lives even though the corpus of the trust estate had to be drawn upon yearly to enable them to so live, and that the invalidity of said bequests of the residue of the estate—for benevolent, educational and charitable purposes on the termination of the trusts—for the sons—does not in any

manner affect the fulfillment of the primary objective
of the testatrix; that the purpose for which each trust
was created cannot be fulfilled and accomplished until
the death of the son for whose benefit said trust was
created and that each of said trusts is a live and active
trust, and that its continuance during the lifetime of
the son for whose benefit it is to be held and admin-
istered by said trustee, is necessary to carry out the
purpose for which it was created."

The trial court ordered the executors to transfer
the residue of the estate to the First National Bank
as trustee, to hold and administer the respective shares
of Urban Morgan and Arthur R. Morgan, Jr., during
their respective lives and upon the death of either, his
share should be paid to those entitled under the laws
of descent and distribution, "and/or any and all valid
and effective assignments, conveyances, wills, renun-
ciations and/or other instruments properly executed
by and binding upon any person or persons who would,
in the absence thereof, be entitled to a distributive
share of such trust upon distribution."

It will be noted that the trial court found that the
primary purpose of the testatrix in creating this trust
was to insure that her sons would be enabled to live
in the way they had been accustomed to live. It will
be noted also that we have not been able to find such
purpose. Undoubtedly, she desired that her sons have
the means to so live, but that could be accomplished
as effectively by an absolute gift of the residue of the
estate to them. Such primary purpose could only be
attributed to her from something in the will indicating
a lack of confidence in the ability of the sons to man-
age and control their own property, and that the trust
was created to take control and management from them
for that reason. In the absence of such an intention,
our conclusion is that the only purpose in creating the

trust was to preserve the corpus for the ultimate named beneficiaries, who would take upon the death of the sons.

It was the gift over upon the death of the sons that occasioned the trust relationship. The testatrix was presented with the alternative of creating an express trust, or of allowing the quasi-trust relationship between the life beneficiaries and remaindermen to be created by law, which would probably result in an administration by a trustee appointed by a court exercising equity jurisdiction. 2 Restatement of Law of Property, 843, Section 204.

We believe the question before the court is this:

Where, by the terms of a testamentary trust, the trustee is expressly given full power to administer the trust for the benefit of the fund, and the life beneficiary of such trust is entitled to the entire net income for life with the right, with the consent of the trustee, to draw upon the principal if necessary to enable him to live in his customary mode, is he, when the gift over to charity, upon his death, fails because of invalidity, and he becomes, through inheritance, the absolute owner of the corpus of the trust estate, entitled to have the trust terminated, and such corpus delivered to him free of all restraint imposed by the terms of the trust?

It seems to us that this case is ruled by the case of *Taylor* v. *Executors of Huber,* 13 Ohio St., 288. The will under construction in that case provided:

"My son Martin, having departed this life since I made my said will, leaving a widow and children, I do declare, will and direct that the said children of Martin shall succeed to the distributive share which would otherwise have accrued to said Martin, in case he had survived me. Provided, however, that the interest of one third part of said share shall be paid annually to

the widow of said Martin, during her natural life, the principal of said one-third part to be distributed to the children, or their heirs, of said Martin, after the death of his said widow. And to the end, that the interest may be raised on said one third, for said widow, and the principal be secured, I do direct that my executors, when the money shall come into their hands, shall loan the same upon bond and mortgage on real estate, and the interest to be paid annually. The money which is to accrue to said children of Martin shall be paid to them as they become of age; and, until that time, shall be loaned on bond and mortgage as aforesaid, except such part as may be necessary for their support.''

Martin left two children, both of whom died intestate, without children, whereby their mother—the beneficial owner of one-third for life—inherited the remainder in fee, just as in the case at bar the remainder in fee has been cast upon Urban Morgan and Arthur R. Morgan, Jr., by the intestacy of their mother, resulting from her death within one year of the execution of the will. In neither case, was the contingency provided for. We also see another similarity in that both wills expressly imposed active duties upon the trustee.

In an action by the mother—life beneficiary—to compel the executor to deliver the trust property to her, the court held, as stated in the syllabus:

''Where a testator, by his will, directed his executors to invest a specific fund, the interest to be paid annually to S., the widow of his deceased son, during her life, and at her death, the principal thereof to be paid to her two sons, L. and D., and L. and D. died without issue, leaving no brother or sister, either of the whole or half blood, and leaving no debts, whereby the principal of said fund descended to S., as their

next of kin. Held, The trust in the hands of the executors having failed by the occurrence of a contingency not provided for by the will, and the entire beneficial interest in the fund having vested in S., equity will decree its payment directly to her, without the delay and expense of successive administrations.''

Although that case was decided in 1862, and has been cited and followed in both state and federal courts many times, it has never been criticised in Ohio or elsewhere. It certainly has never been overruled.

It is significant that *Taylor* v. *Executors of Huber, supra,* is not cited in any of the cases relied upon by the appellees. We believe the explanation is that those cases fall in a different category.

In *Robbins* v. *Smith, Jr., Admr.,* 72 Ohio St., 1, 73 N. E., 1051, the absolute title did not repose in those seeking a termination of the trust. This is expressly stated in the second paragraph of the syllabus. A contingency existed which could not be removed until the death of the life beneficiary.

In *Union Savings Bank & Trust Co.* v. *Alter,* 103 Ohio St., 188, 132 N. E., 834, a trust was created for ten years, during which only a portion of the income was to be distributed and the balance added to the principal, the beneficiaries of which could not be determined until the end of the ten years. It is true that in the first paragraph of the syllabus the statement is made that the direction '' 'that my trustees * * * shall pay the same * * * one-eighth part thereof to my son F. A., and his heirs' * * * will be construed as a gift * * * absolute,'' but this is qualified by the statement that that absolute title is ''subject only to the provisions of the trust.'' The contingency is found in the provisions of the trust. It was so clear that the trust could not be terminated under such circumstances that the question was not raised. What the

lagatees of a stipulated sum annually during the ten years sought was to have the court order the payment of a larger sum annually contrary to the provision of the will. The case also differs from the case at bar in that the trust was not for life, but only for ten years and, therefore, postponement of the benefit or enjoyment of the property could be said to inure to the beneficiaries of the trust.

In *Adair* v. *Sharp, Exr. and Trustee,* 49 Ohio App., 507, 197 N. E., 399, also relied on by appellees, the trustee was given absolute discretion to pay to Adair and his wife, or either of them "so much of the said income as he thinks they or he should have," from the income or principal, and upon the death of the survivor the property remaining was given to their two children. It is clear from this language that Adair and his wife had no vested right to any part of the income, which is in marked contrast to the terms of the will of Mrs. Morgan, which requires the trustee to distribute the net income to the beneficiaries. The fact that the trustee had discretion was emphasized and *Taylor* 'v. *Executors of Huber, supra,* was not cited.

Perhaps greater reliance is placed by appellees upon the recent case of *Feiler* v. *Feiler,* 149 Ohio St., 17, 77 N. E. (2d), 237, but here, again, *Taylor* v. *Executors of Huber, supra,* was not mentioned—and we think for equally obvious reasons. The facts are entirely different. The trust was required to be terminated in not less than 15 years, nine of which had already elapsed. The subject matter of the trust was real estate, the title to which was devised to the trustee with full power to manage, rent, or sell, and to pay net income to named beneficiaries, and if and when he sold to invest the proceeds in annuities in a named insurance company payable monthly to the persons to whom had been bequeathed the net income during

the continuance of the trust. There was no gift of the remainder. The testatrix also provided that her sister should have the occupancy of a part of one of the houses until it was sold. There was no failure of any bequest, and the purpose of the testatrix had neither failed nor been fulfilled.

It will be observed that the only legal title conferred by the will was to the trustee for 15 years with power to sell the fee and invest in annuities. There was no devise of the fee.

The court recognized that the case fell into that special category where there was a direction to sell and invest in an annuity. It reviewed at considerable length the English and American cases of that kind and reached the conclusion that:

"Where the existence of such a testamentary trust, by its terms, must not continue longer than 15 years, the beneficiaries, in the absence of fraud or abuse of discretion by the trustee, cannot successfully claim either the property or the proceeds of its sale, in lieu of the annuities provided, at least until either the 15 years have elapsed or the trustee has, in the exercise of his discretion, sold the property." (Paragraph 2 of syllabus.)

It will be noted the court did not hold that the trust could not be terminated prior to its expiration according to its terms. It did not hold that the annuities must be purchased and that the trust must continue for that purpose. And the court said: "This is not a dry trust or *one that has failed* (emphasis ours), but it is an active one devolving upon the trustee the duties of management in every detail, of paying over net income to the beneficiaries, *of protecting the rights of the sister* (emphasis ours) and of eventually, when the trustee sees fit, selling the various parcels and investing the proceeds in annuities." The dissimilarity

was so striking that the court did not mention *Taylor v. Executors of Huber, supra.*

While we think that the law applied in *Taylor v. Executors of Huber, supra,* is applicable to the case before us and is dispositive of it, we find authority supporting another theory leading to the same conclusion.

Urban Morgan and Arthur R. Morgan, Jr., are given the absolute right to the net income for life, and because of the failure of the gift to the charities, they are also the absolute owners of the trust *res*, subject to their own right to the net income for life. Whatever purpose the testatrix had when she created this trust and conferred powers upon the trustee, that trust and those powers could not benefit Urban Morgan and Arthur R. Morgan, Jr., under the circumstances. The continuance of the trust could only inure to the benefit of whoever succeeds to the title upon their death.

In *Crumlish* v. *Delaware Trust Co.,* — Del. —, 46 A. (2d), 888, 169 A. L. R., 451, the court had before it a trust for life, which imposed no active duties upon the trustee, with remainder, subject to the trust, in the same person having an absolute right to the income during life. The court, after discussing the conflicting authorities, reached the conclusion, found on pages 457 and 458, that:

"Our understanding of the rule is that even though the interest of a beneficiary be vested, and no one else is interested either in the income or corpus of the estate, that the enjoyment of the beneficiary may be postponed in accordance with the plain intent of the creator of the trust, unless such intent contravenes some positive rule of law, or is against public policy.

"In order, however, that an absolute interest in income and a similar interest in principal given by a tes-

tatrix may be postponed by such testatrix as to enjoyment, such enjoyment to be postponed must be the enjoyment of the person entitled to such income and corpus. Any postponement of the benefit or enjoyment which operated or results in the benefit or enjoyment of some third party, and to the detriment of the beneficiary, must be either a *pro tanto* modification of the absolute interest of the beneficiary, or, if such interest in the original beneficiary remain an absolute one, then the postponement solely resulting in the benefit of a third person, ascertained or unascertained, must be inconsistent and entirely repugnant to the absolute interest of the beneficiary, and constitutes no reason that the trust should not be terminated at the suit of the beneficiary of the income and corpus.''

While we mention the rule from *Crumlish* v. *Delaware Trust Co., supra,* we base our decision on our finding that there is nothing in the will indicating any purpose or intent that this trust should be continued during the entire life of her sons, in view of the fact that her desire that the trust *res* go to charities has been defeated by her death during the year after making her will, thereby rendering her intestate in that respect, and casting the absolute title on her sons.

For these reasons, the judgment is reversed and final judgment is rendered for appellants.

*Judgment reversed.*

MATTHEWS, P. J., Ross and HILDEBRANT, JJ., concur in the syllabus, opinion and judgment.