GWINNER, EXR., APPELLEE, *v.* SCHOENY ET AL., APPELLEES; THE CENTRAL TRUST CO., TRUSTEE, ET AL., APPELLANTS.[*]

(No. 8693—Decided February 15, 1960.)

*Messrs. Gwinner & Gwinner*, for plaintiff-appellee.

*Messrs. Bettinger, Schmitt & Kreis*, for defendants-appellees.

*Mr. Carl L. Meier* and *Messrs. Paxton & Seasongood*, for appellant The Central Trust Company, trustee.

*Mr. Fred L. Kruse*, for minor appellants.

*Mr. William G. Busch*, for unborn persons.

MATTHEWS, P. J.   This is an appeal from a judgment of the Probate Court of Hamilton County, construing the last will of John F. Schoeny, deceased, and particularly item 9 thereof.

Item 9 is as follows:

"All the rest, residue and remainder of my estate, both

---

[*]Motion to certify the record overruled, June 8, 1960.

real and personal, of every kind and description, wheresoever situate, which I may own or have the right to dispose of at the time of my decease I give, bequeath and devise to The Central Trust Company, Cincinnati, Ohio, as trustee, with full power, without any order of court, to control, exchange, sell or otherwise dispose of all or any part thereof, and to invest and reinvest in such bonds or other obligations of the United States government, such first mortgage bonds and such mortgages on improved real estate or participations therein, and in such other bonds and securities which are by the laws of Ohio proper investments for trust funds as the said The Central Trust Company, as trustee, may deem suitable and proper, with the right to retain as investments any property coming to said trustee from my estate, without liability for depreciation in value and specifically including any capital stock interests in The Central Trust Company, Cincinnati, Ohio, which I may own at the time of my decease.

"I request that no bond be required of said trustee.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, John Robert Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, George Eugene Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, James Wilson Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, William Merritt Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund

there shall be paid the sum of two hundred ($200) dollars each month to my son, Richard Thomas Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

''The payments out of said trust fund shall begin as of the first day of the month following my death and shall continue until said trust fund has been depleted.''

We quote the provisions from item 9 largely to emphasize the complete separation of the trusts created for the different sons.

At the time of his death, John F. Schoeny was a widower with five sons, all adults at the time. These sons were his only heirs at law and next of kin. They are parties to this action, as are numerous other persons who are described collectively as ''grandchildren and great-grandchildren'' of the decedent. At the trial it was stipulated that there were only three great-grandchildren, and that they were descended from John Robert Schoeny, a son of the testator. Each of the other sons had children, but no grandchildren.

The names of the testator's sons are John Robert Schoeny, George Eugene Schoeny, James Wilson Schoeny, William Merritt Schoeny, and Richard Thomas Schoeny.

The testator's son, John Robert Schoeny, had two children, Roberta Katherine Schoeny Hill and John Thomas Schoeny, born prior to the testator's death. Roberta Katherine Schoeny Hill had one child, John Wm. Hill, Jr., born prior to her grandfather's death, and two children, Robert Allen Hill and Catherine Ann Hill, born subsequent to her grandfather's death. Said Robert Allen Hill was legally in being at the time of the testator's death.

The testator's son, George Eugene Schoeny, had five children born prior to the testator's death—Kenneth Eugene, Sally Ann, Carol Jane, John Charles and Mark—and one child, Steven Michael, born subsequent to testator's death.

The testator's son, James Wilson Schoeny, had four children, born prior to testator's death—James Michael, Edward Jeffry, Brian Richard and Mary Patricia.

The testator's son, William Merritt Schoeny, had four children born prior to testator's death—W. Gerald, James

Thomas, Jacquelin Ann and Jean Marie.

The testator's son, Richard Thomas Schoeny, had three children born prior to the testator's death—Rita Sue, Dennis Richard, and Diane Marie.

The Probate Court held that the provisions of item 9 of the will violated Section 2131.08 of the Revised Code, and that therefore the item was illegal and void, and that all the property embraced therein descended as intestate property.

The testator's attorney, who was the draftsman of the will and an attesting witness, testified at the trial that the testator had stated to him at the time in relation to this testamentary trust that his purpose was: "Why, he wanted each son to have something definite to live on for quite a number of years and therefore he requested that the sum of $200 be paid out of the trust estate to each of his children."

The inventoried value of the estate was $396,246.67. After payment of debts and specific legacies there remained $286,246.67, to be delivered by the executor to the trustee under item 9. Of this amount, $73,500 was the valuation placed on certain real estate.

The specific bequests referred to consisted principally of bequests of the entire corporate stock to each of four sons in the family corporation in unequal amounts, and a cash bequest to a fifth son.

The testator had made two prior wills which varied in some detail, but they both contained provisions identical with item 9 of the probated will. There is no doubt that the testator expressed a fixed intention of several years' duration by item 9 of his will.

It is the contention of the sons that the testator contemplated a control of this trust estate beyond the period allowed by the rule against perpetuities (Section 2131.08, Revised Code), and that such intention not only rendered void those provisions creating estates beyond the period allowed by the rule, but also those other provisions which, standing alone, would be entirely valid. In other words, it is said that while there is nothing wrong or illegal in the provision creating the trust provided for in item 9, or in the provision for the payment of $200 per month to each of the five sons, or, perhaps, the

provisions for the benefit of their children, the provision for later generations is too remote—and, if given effect, would violate the rule against perpetuities, and therefore cannot be given effect except for the purpose of destroying the entire testamentary provision.

Section 2131.08, Revised Code, provides:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

The intent clearly expressed by that language is that it is the vesting of the title that was the concern of the Legislature. We pointed this out in *Schreiner, Exrx., v. Cincinnati Altenheim,* 61 Ohio App., 344, 22 N. E. (2d), 587, although the language of the statute is in no sense doubtful, and the common-law rule has been well established for hundreds of years to the same effect, and now expressly enacted as the statute law of Ohio. Of course the legislative intent was also to limit entailment of real estate titles.

Let us apply this rule to the estates created by this will and determine what estates are vested and what estates are contingent, and, therefore, subject to limitation of the rule.

It is certain the sons had a vested life estate. It became vested immediately upon the death of the testator and came into enjoyment the following month when the first payment of $200 became due in accordance with the testator's direction. To such of testator's grandchildren as were in existence, it is equally clear that the only obstacle that prevents the actual enjoyment of the distribution of the $200 per month among them is the fact that the life estate intervenes, and so upon the death of their father, they will come into the enjoyment. The same is true of any child born after the death of the testator. Whatever estate they may take must come to them upon the death of their father. That is the life in being and their estate must

vest, if at all, upon the instant of his death, and, therefore, it vests within a life in being and 21 years thereafter as required by the rule.

As to the great-grandchildren of the testator who were in actual or potential existence at the time of testator's death, it is equally clear that those estates are vested for the same reason. The only difference is that they do not come into actual enjoyment until both their parent and grandparent of the testator's blood have died.

It is clear that the testator did not expressly declare an intent to violate Section 2131.08 of the Revised Code. It is a well-established rule of construction that an unlawful intent will not be imputed in the absence of an express declaration. As there is no such declaration, a lawful intent should be imputed.

It should be noted that by item 9 each son and his issue was made a separate and distinct gift. No stirpes or branch can ever receive more than one-fifth of the trust estate. It is true that identical language was used and the bequests were payable out of the same trust fund, the legal title to which was in the same trustee, but the gifts to the sons were in no sense a gift to a class. They must be considered distinct from one another in applying the rule against perpetuities. The trustee is required to set aside for each son and his issue one-fifth of the residue, and, at least on the record of its administration of these trusts, treat them as separate and distinct trusts so that upon the termination of each trust it will be in a position to distribute the balance as intestate property to those entitled under the laws of descent and distribution. That time will come when the vesting will not occur within a life in being and twenty-one years thereafter and the period of gestation.

The Probate Court reached the conclusion that the testator created this trust primarily to preserve the corpus for the benefit of those entitled after the death of his sons, and that as some of the gifts within his supposed contemplation were too remote, the whole structure fell, leaving no reason for the preservation of the corpus—no reason for the trust—and, therefore, there should be attributed to the testator an intent not to create the trust for any purpose. Having reached this conclusion, it

would follow that the residue should be distributed as intestate property at once, notwithstanding the provisions imposing active duties upon the holder of the legal title.

As we view it, the error results from the conclusion that because the testator's intent cannot be given its full effect and all the estates to all persons contemplated given effect that, therefore, no effect may be given. We have already indicated that item 9 does create valid future estates, and that admittedly furnishes a reason for the preservation of the trust.

However, assuming that the intent of the testator to create future estates should be frustrated, under the circumstances of this case an intent that no trust was intended should not be inferred contrary to the express provisions of item 9. There are indicia of an intent to create a trust in any event. The fact that the testator directed that the monthly payments should begin at once certainly is some evidence of solicitude for his sons. Then, also, it seems natural for a parent to have a greater regard for his own children than for remote descendants, who exist only in contemplation—or even his grandchildren, with whom he may, or may not, be acquainted.

The testator expressed his intent to create these trusts, and surely we must say his chief reason was his solicitude for his sons. Regard "for his issue, per stirpes" must be considered secondary and not the chief motive of the testator.

It is said that placing property in trust is indicative of a lack of confidence in the beneficiary, and that, in view of the fact that the testator had already shown his confidence in four of his sons by giving them all of the corporate stock of the family company, this disproves an intent to place their property in trust. We are not impressed by the argument.

We think the purpose of the testator expressed to his scrivener is the more natural one. He knew the vicissitudes of business, no matter how capably managed, and wanted to provide an anchor to windward for his sons.

After all is said and done, it is solely a matter of intent. A testator is not required to assign a reason for creating a trust. He may create a trust for the most highly successful and frugal as well as the unsuccessful and profligate, if such is his intent. The only requirement is that the purpose should be lawful. 54

American Jurisprudence, 37, Section 19. This is not a dry or passive trust. Item 9 imposes active duties upon the trustee.

In 54 American Jurisprudence, 30, Section 13, it is said: "The general rule is that whether a trust is active or passive depends on the necessity of the trustee holding the legal title to carry out the terms of the trust. If it is essential that the legal title remain in the trustee to enable him to perform the duties imposed by the trust, then the trust is active * * *." Therefore, there is no automatic merger of the equitable and legal title.

It seems to us that Section 402 and the illustrations thereunder of the Restatement of the Law of Property make perfectly clear that this trust for the benefit of the sons should be sustained. We quote Section 402 in toto:

"When part of an attempted disposition fails as a direct consequence of the rule against perpetuities, the effect, if any, of this partial invalidity upon the balance of the attempted disposition is determined by judicially ascertaining whether the conveyor, if he had known of this partial invalidity, would have preferred that

"(a) all the balance of the attempted disposition take effect, in accordance with its terms; or that

"(b) certain parts of the balance of the attempted disposition fail, but the rest thereof take effect in accordance with its terms; or that

"(c) all the balance of the attempted disposition fail."

It seems clear to us that the provisions of this trust place it squarely within the terms of "clause (b)." The illustration to "clause (b)" is found on pages 2354 and 2355, which we find necessary to quote in full:

"A, having assets worth $100,000, makes an otherwise effective devise of them to trustee B, to pay the net income to A's son, C, for life, thereafter to the children of C, until some one child of C attains the age of thirty-five years, and then to distribute the corpus to the children of C then surviving, the share of any deceased leaving issue, to such issue. When A dies, C is alive and no child of C has attained thirty-five. Since C can have further children who can come into the class to which the corpus is given, this class can continue to decrease until thirty-five years after the death of C. The limitation of

the corpus is construed to be subject to a condition precedent requiring survival to the date of distribution and hence fails as a direct consequence of the rule against perpetuities. It is found that the gift of income to the children of C was intended by A to be merely auxiliary or incident to the ultimate (but invalid) gift of corpus. The invalidity of the part of the disposition (as to corpus) causes the gift of income to the children of C, also to fail, but leaves the gift of income to C for life to take effect in accordance with its terms.''

The trust for the life of the sons is identical to that of the life of C in the illustration. There is no higher authority than the Restatement of the Law of Property on this subject.

The case of *Morgan et al., Exrs.,* v. *First National Bank of Cincinnati,* 84 Ohio App., 345, 84 N. E. (2d), 612, is cited as an authority for the complete destruction of these trusts. That case is distinguishable in several respects. In the first place, the rule against perpetuities was not involved at all. It did involve the statute invalidating all charitable gifts by will made within one year of the testator's death. The will in that case created a trust for the lives of her two sons, with provision that upon their deaths the entire trust fund should be paid to certain charities. The testatrix died within the year, and, therefore, the gifts to charities were invalid.

In an action for a declaratory judgment in the *Morgan case,* this court held, on a review of the facts and circumstances, that the purpose of the trust had entirely failed and that the trust should be terminated.

In the case at bar we find that there are valid future estates, and that the purpose of the trust has not failed. Our conclusions on the facts are diametrically opposed. We apply the same law, but reach a different conclusion on the facts.

For these reasons, the judgment of the Probate Court of Hamilton County is reversed, and final judgment will be entered in this court in accordance with this opinion.

*Judgment accordingly.*

O'CONNELL, J., concurs.

Long, J., dissenting. This is an appeal from a part of the judgment of the Probate Court of Hamilton County, wherein that court construed item 9 of the will of John F. Schoeny, deceased.

Letters testamentary were issued to Robert W. Gwinner as executor and The Central Trust Company was appointed trustee under the terms of the will.

After making specific bequests, the testator in item 9 of his will created a testamentary trust, the interpretation of which by the court below constitutes the ground for this appeal. The trial court held that item 9 was violative of Section 2131.08 of the Revised Code of Ohio, and was, therefore, invalid.

Section 2131.08, Revised Code, provides:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

Item 9 is as follows:

"All the rest, residue and remainder of my estate, both real and personal, of every kind and description, wheresoever situate, which I may own or have the right to dispose of at the time of my decease I give, bequeath and devise to The Central Trust Company, Cincinnati, Ohio, as trustee, with full power, without any order of court, to control, exchange, sell or otherwise dispose of all or any part thereof, and to invest and reinvest in such bonds or other obligations of the United States government, such first mortgage bonds and such mortgages on improved real estate or participations therein, and in such other bonds and securities which are by the laws of Ohio proper investments for trust funds as the said The Central Trust Company, as trustee, may deem suitable and proper, with the right to retain as investments any property coming to said trustee from my estate, without liability for depreciation in value and specifically including any capital stock interests in The Central

Trust Company, Cincinnati, Ohio, which I may own at the time of my decease.

"I request that no bond be required of said trustee.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, John Robert Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, George Eugene Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, James Wilson Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, William Merritt Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"Out of the income and/or principal of said trust fund there shall be paid the sum of two hundred ($200) dollars each month to my son, Richard Thomas Schoeny, during his lifetime and after his death the said payments of $200 each month shall continue and be paid to his issue, per stirpes.

"The payments out of said trust fund shall begin as of the first day of the month following my death and shall continue until said trust fund has been depleted."

It is obvious that this item creates a trust in the residue of the estate and provides for the payment of $200 per month to each of testator's sons, and that upon the death of any son, the $200 payable to such son should be paid to the *issue* of such deceased son, *per stirpes*.

It is further obvious that these payments of $200 each month shall be paid out of income or principal of said trust until the trust fund has been depleted.

At the outset we must keep in mind that it is admitted by appellants that the trust, after termination of the life estates of the great-grandchildren, violates the law against perpetuities. It seems to this court from a reading of the law and the cases on the subject that it is our duty to determine what was in the mind of the testator when he created this trust. Did he intend to tie up the residuum of his estate, in excess of a quarter of a million dollars, until it was depleted; all of which being subject to life estates of great-grandchildren, not yet in being? Are such life estates so remote as to invalidate the entire trust? It is conceded, as stated above, that the time will come in the administration of the trust, when the rule against perpetuities will arrive, and thereafter the administration of the trust must end. The sole question then, it seems, is whether or not the invalid limitation of the trust is an integral part of the general plan of the trust. If the invalid part is a necessary item of the general purpose of the trust, then the whole trust must fail. This appears to be the weight of authority on the subject. As stated in 41 American Jurisprudence, 105, Section 61, "where the chief purpose of the testator is to tie up the estate and prevent its distribution until a period too remote under the rule against perpetuities," then the trust is void for remoteness. It seems that this is not only the real purpose of the testator in the case at bar, but the actual result.

See, also, 41 American Jurisprudence, 100, Section 57.

In the light of the language of the trust, that the payments shall be made to the sons, and after them, to their issue, great-grandchildren and great-great-granchildren, until "said trust has been depleted," what other conclusion can be reached? It is urged that this situation will never arise because investments at 4% are unlikely, and the cost of administration of the trust, plus fees to attorneys and to the trustee, would cause the corpus of the trust to be exhausted before the arrival of the time when the trust would expire because of the application of the rule against perpetuities. Who can say that such a result is probable? It is possible; but is it the province of the law to administer trusts of such uncertainty and remoteness?

It is further urged that because there was a great-grandchild in being at the time of the vesting of the life estates, that

this saves the trust from invalidity as to all persons in that class, born or unborn. It seems to us that where the estates in remainder, to the issue of any sons, are void by reason of the violation of the rule against perpetuities, the fact that there is one of the class who can take, does not save the trust as a whole; if that is so, then the life estates attempted to be created in all great-grandchildren fail and the property descends to the testator's sons as intestate property.

In 41 American Jurisprudence, 102, Section 58, we find this statement of the law: "* * * where there is a general scheme essentially for the benefit of a class [issue, per stirpes, great-grandchildren], such as the testator's grandchildren, all of whom are presumably the equal objects of his [testator's] bounty, and the devise to part of them is invalid under the rule against perpetuities, the whole devise must fall, since to uphold part as valid would be to work an injustice between members of the class." See, also, 70 Corpus Juris Secundum, 595, Section 16; 31 Ohio Jurisprudence, 324, Section 26; *Dayton* v. *Phillips*, 28 W. L. B., 327, 11 Dec. Rep., 680; *Hatch* v. *Hatch*, 31 W. L. B., 57, 1 O. D., 270.

In other words, the phrase "issue, per stirpes" creates certain classes. It is conceded that the rule is violated as to some in those classes. Therefore, the respective remainders in each of the classes are void.

If what we have said is true; if the trust fails, it is obvious that only the sons have any vested interest in the corpus of the trust or residue of the estate; for failure of the remainders to the issue of the sons, the life estates of the sons and the remainders merge; the sons become "the absolute owners of the corpus of the trust estate and are entitled to have the trust terminated, and such corpus delivered to them free of all restraint imposed by the trust." *Morgan et al., Exrs.*, v. *First National Bank of Cincinnati*, 84 Ohio App., 345, at 355, 84 N. E. (2d), 612.

It is the opinion of the writer that the testator in this case conceived and adopted a general plan to provide life estates not only for his sons but for their issue, "per stirpes," in perpetuity, if necessary, until the corpus of the estate was depleted. As pointed out, invested at reasonable rates of income and managed by one of the best trust companies in this community,

it is possible for this trust to last for hundreds of years. It is my opinion that the trust is violative of the rule against perpetuities, and for that reason, the judgment of the Probate Court of Hamilton County, Ohio, should be affirmed.