NEWMAN, EXTRX., PLAINTIFF, *v.* NEWMAN ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 653705.   Decided June 25, 1964.

*Messrs. Portmann & Portmann*, for plaintiff.

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman*, for defendant, Mrs. M. J. Campen (Incompetent).

*Mr. Horace Andrews*, for defendant, American Cancer Society.

*Messrs. Squire, Sanders & Dempsey*, for defendant, Cleveland Area Heart Society.

*Mr. H. H. Felsman*, for defendant, United Cerebral Palsy Association.

*Messrs. Thompson, Hine & Flory*, for defendant, Maternal Health Association.

ANDREWS, CHIEF REFEREE. This case involves the so-called mortmain statute, Section 2107.06, Revised Code, and a brief encounter with the doctrine of dependent relative revocation. It concerns the will and codicil of Aaron W. Newman, who died on December 22, 1963.

Mr. Newman executed a will on September 8, 1961, and a codicil on May 14, 1963, both of which have been admitted to probate. Mrs. Lucille M. Newman, the widow, is the executrix of Mr. Newman's will and the plaintiff in this action, which asks for a declaratory judgment answering eight questions.

Inasmuch as the answers to the questions depend primarily upon the solution of the main problem, I will postpone the specific questions and answers until that solution has been accomplished.

The pertinent part of Section 2107.06, Revised Code, is as follows:

"If a testator dies leaving issue * * * and the will of such testator gives, devises, or bequeaths such testator's estate, or any part thereof, to a benevolent, religious, educational, or charitable purpose, * * * such will as to such gift, devise, or bequest, shall be invalid unless it was executed at least one year prior to the death of the testator."

Testator left four children surviving him. They have expressly refused to waive their rights under the mortmain statute.

As previously stated, Mr. Newman's will was executed on September 8, 1961, more than a year before his death. But the codicil was executed on May 14, 1963, less than a year before his death.

By Item II of his will, the testator divides all his estate, after payment of debts and funeral expenses, into two equal

parts. The first of these parts he gives absolutely to his wife. Her one-half is not to be diminished by payment of any estate tax or inheritance tax. Such taxes are to be paid out of part two.

We are not concerned with Item III, which gives certain specified personal property to the widow.

Item IV deals with part two, diminished, as above stated, by taxes. For convenience, I will refer to it as part two, without repeating the direction about taxes.

The beginning of Item IV reads:

"I direct that all of the rest and residue of my estate which does not go to my wife, LUCILLE M. NEWMAN, shall be divided into two parts equal in value * * * and the first of such two equal parts shall be distributed as follows:"

It will be seen from the above that what I have referred to as part two is itself divided into two equal parts. Again for convenience, I will refer to these two divisions of part two as two A and two B.

Testator directs that part two A shall be distributed in the following proportions: three-ninths to testator's daughter and one-ninth each to testator's three sons, two sisters, and a sister-in-law.

Testator directs that part two B shall be distributed share and share alike among seven "charities," all of which are concededly within the purview of Section 2107.06, Revised Code.

The codicil of May 14, 1963, begins as follows:

"I * * * do make, publish and declare this codicil which alters my Last Will and Testament dated the 8th day of September, 1961.

"It is my will that Item IV of my Last Will and Testament be omitted so that it shall read as follows:"

Testator then directs that all of the rest and residue of his estate which does not go to his wife shall be distributed in the following manner; i. e., a bequest of $1,000 to his sister, Mrs. Gertrude Newman; a bequest of $5,000 to his sister-in-law, Mrs. Babbette Newman; and all of his estate not disposed of above to be distributed share and share alike among the same "charities" designated in his will.

The last paragraph of the codicil states:

"I hereby confirm and republish my will of the 8th day of September, 1961 in every respect excepting as it is altered herein."

As I observed previously, the testator died within a year of the execution of the codicil. Section 2107.01, Revised Code, provides that in Chapters 2101 to 2131, inclusive, Revised Code, the word "will" includes codicils. As a consequence, a codicil is subject to the restrictions of Section 2107.06, Revised Code, invalidating charitable bequests made by a will executed within a year of the testator's death. See 55 Ohio Jurisprudence (2d), *Wills*, Section 77, p. 549 (1963). Indeed, counsel do not dispute this proposition.

It is evident, then, that unless some way can be found to avoid the operation of Section 2107.06, Revised Code, in this case, the gifts to the charities must be regarded as invalid.

One ground advanced for validating the charitable bequests involves the application of the doctrine known as dependent relative revocation. For reasons which will appear, I will not go into a lengthy discussion of this doctrine. As applied to the facts of the present case, the argument would proceed along the following lines. Even though we conclude that the testator revoked the charitable gifts contained in the will, the very fact that in the codicil he made substantially the same gifts to exactly the same charities indicates that he wished the revocation to be dependent upon the effectiveness of the gifts contained in the codicil. Inasmuch as his death within a year prevented these gifts from becoming effective, the condition upon which the revocation depended never arose, and the charitable bequests contained in the will, executed more than a year before the testator's death, are valid and should be enforced. From the mass of material on the subject, I am selecting only two cases and a few secondary authorities for citation.

In the following two cases, the doctrine was applied where the charitable bequests in the original will were identical with those in the later revoking will. *In re Kaufman's Estate*, 25 Cal. (2d), 664, 155 P. (2d), 831 (1945); *Linkins* v. *Protestant Episcopal Cathedral*, 87 App. D. C., 351, 187 F. (2d), 357, 28 A. L. R. (2d), 521 (1950).

In the *Kaufman case*, the following remarks by the court are illuminating.

"Under the doctrine of dependent relative revocation, an earlier will, revoked only to give effect to a later one on the supposition that the later one will become effective, remains in effect to the extent that the latter proves ineffective. (Citations omitted.) The doctrine is designed to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will became inoperative."

See also 28 A. L. R. (2d), 526 (1953), where the cases pro and con are collected; Atkinson, Handbook on the Law of Wills (2d ed., 1953), Section 88; Cornish, Dependent Relative Revocation, 5 Sou. Cal. L. Rev., 273 and 393 (2 parts) (1932); Warren, Dependent Relative Revocation, 33 Harv. L. Rev., 337 (1920); Note, 64 Harv. L. Rev., 686 (1951).

Enticing as the concept of dependent relative revocation may be, together with the question whether this is a proper case for its application despite the possibility that the residue to the charities may be greater under the codicil than under the will, I consider myself under obligation to reject the doctrine.

My obligation arises from an unreported case decided by this Court in 1960 and affirmed by the Court of Appeals of Cuyahoga County in 1961. The case is *Jewish Community Federation of Cleveland* v. *Clevleand Trust Co.* It is number 554490 in the Probate Court and number 25339 in the Court of Appeals. In the interest of brevity, I will refer to it as the *Federation case.*

In that case the testator executed a will on October 11, 1955, by paragraph seven of which he made a number of pecuniary bequests to various charities, among them a bequest of $50,000 to plaintiff, the Federation. In a later will, dated March 22, 1957, he made exactly the same charitable bequests in the new paragraph seven, except that he reduced the bequest to Mount Sinai Hospital from $10,000 to $5,000, and added a $5,000 bequest to a new beneficiary, the Jewish Convalescent Hospital of Cleveland. The total amount of these charitable bequests was the same, and the $50,000 bequest to the Federation was the same. The second will contained the following revocation clause:

"I * * * do hereby make, publish and declare this to be my

last Will and Testament, and I do hereby revoke all former wills, codicils and testamentary dispositions made by me.''

The testator died on August 1, 1957.

A study of the briefs filed in the *Federation case* in the Probate Court and the Court of Appeals shows that the chief argument centered around the doctrine of dependent relative revocation. In a memorandum opinion, Judge Frank J. Merrick, Presiding Judge of this Court, held that the charitable bequests were invalid. I quote from his opinion.

''The theory of 'dependent relative revocation' has never been accepted in Ohio, and no case has been cited, wherein any Ohio court has entertained it in any respect.

''Perhaps the theory is untenable for the reason that our statutes connote that in order to have a paper writing effective to pass property after death, such must be a will, a codicil which can be engrafted on a will or a book or paper which is incorporated by reference in a will.

''The Court has before it, a will duly admitted to probate. The first paragraph revokes all other wills, previously executed. The testator died within a year, which makes Section 2107.06, Revised Code, operative and invalidates all bequests contained in section VII of the will.''

After referring to his own dislike of the statute, Judge Merrick continues:

''The Court must uphold the law as long as it remains on the statute books.''

This opinion surely buries the doctrine of dependent relative revocation insofar as it applies to the Ohio mortmain statute, cited above.

The affirmance without opinion by the Court of Appeals contains the following notation over the name of Judge Kovachy, P. J.:

''Judgment affirmed for the reason that Section 2107.06, Revised Code, is a subsisting, valid and constitutional amendment of the General Assembly and is applicable without exception to all last wills and testaments that factually fall within its purview, and where the facts, as here, conform to said statute and all prior wills are expressly revoked by the testator, the 'doctrine of Dependent, Relative Revocation' is not perti-

nent. See *Patton* v. *Patton,* 39 Ohio St., 590; 28 R. C. L. p. 182, Section 141.''

This decision appears to sound the death knell of dependent relative revocation in mortmain cases, at least where the later document expressly revokes all prior wills.

My attention has been called to a more recent decision, where the court, in effect, is said to have adopted dependent relative revocation without even mentioning it. See *In re Ritchie's Estate,* 93 Ohio Law Abs., 407 (Prob. Ct., Butler County, 1964). The facts in the *Ritchie case* were very different from those in the instant case, and, besides, we are duty bound to follow our own Court of Appeals.

Counsel for some of the charities claim that the situation in the present action is so dissimilar from that in the *Federation case,* that the latter is not binding upon us. With this contention I disagree.

The chief argument revolves around the point that in the instant case we have a will, plus a codicil which does not revoke the will, whereas in the *Federation case,* there was a second will which expressly revoked the first. Certainly, the mere fact that the second instrument is a codicil and that the original will was not *wholly* revoked does not put the present case outside the scope of the *Federation decision.* Under the theory of that decision, it seems to me that if a *particular clause* in a will is revoked, whether by a subsequent will or by a codicil, the doctrine of dependent relative revocation will not be resorted to in order to keep the revoked clause alive. If the revocation of a whole will cannot be treated as conditional, neither can the revocation of a part.

It then becomes important to determine whether Item IV of Mr. Newman's codicil revokes Item IV of his will. Counsel argue that the language used is not sufficient to constitute a revocation.

Without, for the moment, looking at the preamble to the codicil, we find the following language:

''It is my will that Item IV of my Last Will and Testament be omitted so that it shall read as follows:''

Although the word ''omitted'' may seem unusual, ''omit'' does mean ''to leave out,'' and, thus, taken alone, ''omitted'' should be given the same effect as ''revoked.''

But next we are faced with the immediately succeeding words, "so that it shall read as follows." If Item IV of the will is "omitted," how can it "read as follows"? The answer is that, taken as a whole, the language used constitutes a substitution of the new Item IV for the old Item IV, which, of necessity, entails the revocation of the old Item IV.

Counsel also argue that the last sentence of Item IV of the codicil keeps alive the charitable bequests in Item IV of the will. The sentence reads:

"I hereby confirm and republish my will * * * in every respect excepting as it is altered herein."

Inasmuch as the same charitable beneficiaries appear in Item IV of the codicil as in Item IV of the will, it is contended that, in this respect, the codicil does not alter the will.

One trouble with this contention is that in the previous part of the codicil, as we have seen, testator, in effect, revokes Item IV and replaces it with a new Item IV. This certainly constitutes an alteration of the will. Moreover, the new Item IV gives to the charitable beneficiaries all of part two, diminished only by two pecuniary legacies totaling $6,000, whereas the will divided part two into two equal parts, which I have called A and B, and gave part A to testator's sons and daughter, and others, and part B to the charities. In the codicil, testator omitted the bequests to his four children and to one of his sisters, and bequeathed only $1,000 and $5,000 respectively to another sister and to his sister-in-law. Thus, in its details, Item IV is materially altered, and it is apparent that when testator confirms and republishes his will in every respect, "excepting as it is altered herein," he is referring to the items over than Item IV. This view is consistent with the preamble of the codicil, in which testator states:

"I * * * do make, publish and declare this codicil which alters my Last Will and Testament dated the 8th day of September, 1961."

The item of the original will containing the charitable gifts having been revoked, and a new provision having been made in the codicil, our case is squarely within the principle enunciated by the Court of Appeals in the *Federation case.*

Counsel also raise the point that in our case the beneficiaries are the same, whereas in the *Federation case,* one new beneficiary was added in the second will. Again, within the reasoning of the Court of Appeals, this makes no difference.

Counsel observe also that in the *Federation case* the property invalidly bequeathed went into the residuary clause, whereas in our case it would become intestate property. The law does not favor intestacy, they argue. This statement is one of those broad maxims which are more or less meaningless until applied. Certainly the maxim can have no application to a mortmain statute, the very operation of which will often result in a partial intestacy.

It is my opinion that under the *Federation decision,* I am not at liberty to entertain the doctrine of dependent relative revocation in the action before me.

Some of counsel also argue that wholly apart from dependent relative revocation, I should uphold the charitable gifts on the ground that the statute was not intended to cover this type of situation, where, more than two years before his death, the testator made bequests to exactly the same charities. After all, goes the argument, the purpose of the statute is to prevent undue influence enhanced by the apprehension of approaching death. *Kirkbride* v. *Hickok,* 155 Ohio St., 293, 302, 98 N. E. (2d), 815, 820 (1951). And the statute should be strictly construed. *Thomas* v. *Trustees of Ohio State University,* 70 Ohio St., 92, 108, 70 N. E., 896, 898 (1904); 1 Bowe-Parker, Page on *Wills,* Section 3.15, p. 106 (1960).

It is illogical, say counsel, to hold that the statute was intended to invalidate a charitable bequest made more than a year before death and merely repeated in a later will or codicil. If the charitable gifts were designated in the original will only, and were not revoked by the codicil, they would be valid. Why then should they be treated as invalid when repeated in the codicil? This idea found favor with Judge Edgerton in his concurring opinion in *Linkins* v. *Protestant Episcopal Cathedral,* 87 App. D. C., 351, 187 F. (2d), 357, 28 A. L. R. (2d), 521 (1950), referred to previously. See also, 63 Harv. L. Rev., 697 (1950).

It will be recalled that in *Linkins* the charitable bequests

were identical in the original and succeeding wills. As I have pointed out, this is not so in the will and codicil executed by Mr. Newman. It is entirely possible that under the scheme of the codicil, the charities would receive more than under the will. But even in this situation, counsel for one of the charities points out the paradox in holding the charitable gifts invalid. On two occasions, counsel argues, the testator has formally manifested his intention to give to a designated group of charities. The second manifestation may result in larger gifts than the first. Yet the charities get nothing.

Despite the paradox, I think that under the *Federation case* I must hold that the charitable bequests are invalid. A perusal of the briefs in that case shows that in addition to the dependent relative revocation argument, counsel argued that the mortmain statute should be interpreted as validating the bequests contained in the original will, made more than a year before the testator's death. In holding that the bequests were invalid, the Court of Appeals must necessarily have disagreed with that interpretation, even though their memorandum referred only to dependent relative revocation. Moreover, the Court of Appeals apparently took the position that when the bequests of the original will are revoked, that finishes them. It would be illogical to say that they are absolutely revoked so far as dependent relative revocation is concerned, but only conditionally revoked so far as Section 2107.06 is concerned.

Attention has been called to *Ruple v. Hiram College*, 35 Ohio App., 8, 171 N. E., 417 (Cuyahoga County Court of Appeals, 1928). There is no inconsistency between that decision and the *Federation case*, and if there were, the latter, being more recent, would govern.

I hold that the charitable bequests in Mr. Newman's will were unconditionally revoked by the codicil, and that the charitable bequests in the codicil are invalid by reason of Section 2107.06, Revised Code.

We are now in a position to consider the eight questions propounded by plaintiff in her petition. Where the answers follow automatically from the conclusions given above, a simple yes or no will suffice. Where further explanation is needed, it will be presented.

Question 1. "Does Section 2107.06, Revised Code, commonly known as the Mortmain Statute, control said decedent's Codicil?" Answer: Yes.

Question 2. "Does such statute make invalid the attempted gifts to charities as set forth in Item IV of said Codicil and therefore prevent said charities from inheriting under and by virtue of said Codicil?" Answer: Yes.

Question 3. "Is Item IV of the Codicil a complete residuary clause which controls all property not otherwise disposed of by said Last Will and Testament and Codicil?" The new Item IV, as it appears in the codicil, starts out with the direction that "all of the rest and residue" of testator's estate which does not go to his wife, "shall be distributed as follows."

Taken by itself, this appears to be a residuary clause. But the first paragraph following the above language contains a bequest of $1,000 to testator's sister, Mrs. Gertrude Newman, and the second paragraph contains a bequest of $5,000 to testator's sister-in-law, Mrs. Babbette Newman. These are known as general or pecuniary bequests. See 56 Ohio Jurisprudence (2d), *Wills*, Section 783, p. 293 (1963). Plaintiff's petition refers to them as specific bequests. It is obvious that they are no part of the residuary estate. Although testator used residuary language, it is clear that in doing so he was referring merely to that part of his estate not given to his wife.

The third paragraph of Item IV of the codicil does constitute a residuary clause. It reads as follows:

"It is my will that all of my estate not being deposed (*sic.*) of above shall be distributed share and share alike among the following institutions:"

No set form of words is necessary to a residuary clause. Any words which show an intention to dispose of all of testator's estate not otherwise disposed of, will serve as a residuary clause. 4 Bowe-Parker, Page on Wills, Section 33.48, p. 372 (1961).

Thus the answer to Question 3 is that the first two paragraphs of Item IV of the codicil are not residuary clauses, but the third paragraph, designating the charitable beneficiaries, is a residuary clause.

Question 4. "Does the invalidity of Item IV of the Codicil revive Item IV of the said Last Will and Testament?" Answer: No.

Question 5. "Is the property or share of the decedent's estate which he attempted to Will (*sic.*) to the charities in his Codicil, controlled by his Last Will and Testament and Codicil, or does it descend to the heirs at law of the decedent as intestate property?" Answer: It descends to the heirs at law of the decedent as intestate property. See *Patton* v. *Patton*, 39 Ohio St., 590 (1883); *Morgan* v. *First National Bank of Cincinnati*, 84 Ohio App., 345, 84 N. E. (2d), 612 (1948); 1 Bowe-Parker, Page on Wills, Section 3.16 (1960).

Question 6. "Does Lucille M. Newman as surviving spouse, share in any such intestate property?" Counsel has informed me that Mrs. Newman elected to take under the will. Section 2107.42, Revised Code, provides that an election by the surviving spouse to take under the will "shall not bar the right of the surviving spouse to an intestate share of that portion of the estate as to which the decedent dies intestate." Inasmuch as Mr. Newman died intestate as to the residue earmarked for the charities, the widow is entitled to her intestate share of such residue. Hence, the answer to this question is "yes."

Question 7. "What persons or institutions receive the balance of the decedent's estate after payment of debts, funeral expenses, distributions to Lucille M. Newman, taxes and specific bequests?"

It is not quite clear what the question means by "distributions to Lucille M. Newman," but I will assume that it refers only to the gifts made by Items II and III of the will, not to any share in the intestate property. Also, as already noted, counsel, in referring to specific bequests, means the general bequests in the codicil to Mrs. Gertrude Newman and Mrs. Babbette Newman. Thus, basically, the question refers to the property bequeathed to the charities, which, by reason of the invalidity of the bequests, is intestate property. The persons entitled to this property are the widow, Lucille M. Newman, and the four children. Section 2105.06 (C), Revised Code.

Question 8. "What amount or share does each such beneficiary receive?"

334

Apparently the question is not concerned with the widow's half of the estate bequeathed under Item II of the will, nor with Item III, giving her certain tangible personal property, but only with the property represented by Item IV, paragraph 3, of the codicil; namely, the residue bequeathed to the charities. The bequests being invalid, and the property passing as intestate property, distribution should be made as follows: one-third to the widow, Mrs. Lucille M. Newman; and the other two-thirds to be divided equally among the four children of the testator, Edward S. Newman, William S. Newman, David L. Newman, and Marian H. Newman. See Section 2105.06 (C), Revised Code.